## FEDERAL DEPOSIT INS. CORPORATION v. CONGREGATION POILEY TZEDECK et al.

### No. 100, Docket 20399.

Circuit Court of Appeals, Second Circuit.

Dec. 31, 1946.

Victor Levine and M. Leonard Shapero, both of Syracuse, N. Y., for appellants Congregation Poiley Tzedeck, Meyer Voit, Solomon Spector, Hyman Rosenbloom, Max Rosenbloom, Harry Weiner, and Barnct Simon.

Benjamin M. Gingold, of Syracuse, N. Y., for appellants Israel Gingold, Bessie Gingold, and Jacob Engel.

W. Chase Young and Francis L. McElroy, both of Syracuse, N. Y., for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment entered in an action brought to procure a declaration of the plaintiff's rights in a parcel of land in the City of Syracuse, and against some of the defendants, as guarantors of a bond and mortgage upon the same parcel. The judge found the facts as follows. On December 4, 1922, Jacob Weiner and Israel Gingold, who were record owners of the parcel in question, and their wives, conveyed it to Congregation Poiley Tzedeck, a New York religious corporation, by a deed in which the Congregation covenanted not to use the premises "for any purposes other than synagogue purposes or pertaining directly to the benefit and welfare of a synagogue only. And it is expressly understood that the said covenant shall attach to and run with the land. This deed shall embody a certain agreement made and entered into this day between the Congregation Poiley Tzedeck and the Society Chevra Kadisha of Poiley Tzedeck, pertaining to the land herein conveyed." The agreement, so incorporated into the deed, recited that the Society was the owner of the parcel and wished to give it to the Congregation, which was willing to accept it upon the condition that Weiner and Gingold, the record owners, should execute a deed in the same terms as the covenant just recited. Some three years later, on February 6, 1926, the Congregation executed a bond for $25,000 to the plaintiff's assignor, the First Trust and Deposit Company of Syracuse, secured by a mortgage upon the parcel, which did not mention either the restrictive covenant in the deed from Weiner and Gingold, or the agreement between the Congregation and the Society, both of which were, however, on record in the county clerk's office of Onandaga County, where the land was situated. Twenty-five individuals executed a guarantee to accompany the bond, each guarantee being limited to $1000; and the individual defendants, other than Gingold and his wife and Weiner's wife, were among these guarantors. The Congregation defaulted upon payments under the bond, and the plaintiff wishes to foreclose.

An action for a declaratory judgment was brought in August, 1944, and a judgment was entered June 8, 1945, in which the court made three declarations: (1) That a judgment, earlier recovered by the

plaintiff for unpaid interest and taxes, did not bar an action for the principal and interest of the mortgage, or for later taxes; (2) that the covenant in the deed to the Congregation, restricting the parcel to use as a synagogue was invalid; and (3) that the guarantors were severally liable for $1000 with interest from the date of their defaults. The cause came on for trial on January 18, 1945, at a time when none of the defendants had filed an answer. However, Engel—a guarantor—and Gingold and his wife appeared by attorney, the plaintiff put in some evidence, and the case went over to March 23, 1945. Meanwhile on February 7, 1945, Engel, the two Gingolds and four of the guarantors—not including Jacob Weiner—filed answers, and on the adjourned day they appeared by attorney, together with the Congregation, two other guarantors and Jacob Weiner and his wife. The judge opened the defaults of all these, and they put in evidence on the adjourned day; he filed his opinion on April 23, 1945, his findings on May 25, 1945, and his judgment on June 8, 1945—as we have said. The Congregation filed an answer on April 15, 1946, almost a year after entry of the judgment. On July 10, 1945, five of the guarantors who had answered, filed notices of appeal; so did the Congregation and a sixth guarantor, who had not answered. Engel and Gingold and his wife filed notices of appeal on April 15, 1946; Jacob Weiner has never filed one. The appellants allege in their reply brief that Gingold and Weiner "served a notice" (a notice of appeal) "on counsel for the appellee on time," and that it was not returned; and we shall assume that this is true. They assert that this was adequate compliance with Federal Rules of Civil Procedure, Rule 73(a), 28 U.S.C.A. following section 723c. None of the appellants challenge the first of the three declarations made in the judgment.

The first question is whether the appeal of Gingold and Engel, taken by merely serving a notice of appeal upon the appellee, can stand under Rule 73(a). Before the advent of the New Rules—and the same thing still remains true in the admiralty—some allowance of an appeal by a judge was a condition upon the transfer of the cause to the upper court;[1] and, even though the strictness of this requirement was somewhat relaxed in Georgia Lumber Co. v. Compania de Navigacion Transmar,[2] which treated a notice of appeal filed in the district court as an application for allowance, nevertheless it had to be followed by actual allowance, although that might be after the time to appeal had expired. This has been followed in The Tietjen & Lang No. 2;[3] Cohen v. Casey;[4] and In re Granada Apartments.[5] The reasons given for requiring any allowance of an appeal, as they were stated in Alaska Packers Association v. Pillsbury, supra (301 U.S. p. 177, 57 S.Ct. 683), were "that there may be some assurance that the suit is one in which there may be a review * * *. In this way improvident and unauthorized appeals are prevented." A mere notice to the appellee was not an equivalent, because no judge might ever have allowed the appeal. Now that the last remnant of judicial supervision over the allowance of appeals—which had indeed always been in practice only a formality—has been swept away, the question arises whether mere notice—even though not filed, but only served upon the appellee—will not satisfy all practical requirements. In Reconstruction Finance Corporation v. Prudence Securities Advisory Group,[6] the court held that the failure to make timely application in the circuit court of appeals for leave to appeal—which was a condition upon appealing from the order then in question—was not fatal to the appeal in a case where the appellants had filed notices of appeal in the district court. Douglas, J., said that "the court has discretion, where the scope of review is not affected, to disregard such an. irregularity in the interests of substantial justice," i.e., timely application was not an unbreakable condition upon transfer of the cause to the upper court. In that case the appel-

[1] Alaska Packers Association v. Pillsbury, 301 U.S. 174, 57 S.Ct. 682, 81 L. Ed. 988; McCrone v. United States, 307 U.S. 61, 59 S.Ct. 685, 83 L.Ed. 1108.

[2] 323 U.S. 334, 65 S.Ct. 293, 89 L.Ed. 280.

[3] 3 Cir., 143 F.2d 711.

[4] 1 Cir., 152 F.2d 610, 612.

[5] 7 Cir., 155 F.2d 882, 887.

[6] 311 U.S. 579, 61 S.Ct. 331, 333, 85 L.Ed. 364.

lants' mistake had been extremely excusable; they had acted in reliance upon an earlier decision of ours that an appeal lay without leave and that it was enough to file a notice of appeal as in other cases. The Supreme Court had overruled our decision after their time to appeal had expired, so that, in spite of their correct procedure—as the law stood—our mistake had forfeited their rights. That it was only some such circumstances as these which made it proper to grant the relief, the court itself recognized at the time; and both the First Circuit[7] and we[8] have since then acted upon that admonition. In the case at bar Engel and Gingold offer no excuse whatever except that they were following New York practice, which requires notice of appeal to be both filed and served[9] and with which, therefore, they incidentally did not comply. Whether the New York decisions hold that service alone may be enough, we do not stop to consider; for the excuse is insufficient anyway.

■ Besides, we think that, even were it a much better excuse than in fact it is, some paper must be filed in at least one court or the other, to constitute a notice of appeal under Rule 73(a); and that a transaction in pais between the parties, of which no record is made in either court, will not serve. More is at stake than informing the appellee that the appellant is not content with the judgment. The courts themselves ought to be able to learn with assurance when the cause has been transferred, for their power to act depends upon that event. Nothing would be more conducive to uncertainty than to make the transfer turn upon transactions between the parties, which were nowhere recorded, but from which it might eventually be concluded that the appellant had adequately advised the appellee. Were that the test, we could not rationally stop at the service of a formal notice of appeal upon the appellee; any information would be enough: a letter, even an oral statement, provided it were explicit. To subject the relative powers of the courts

to doubt until such vexed issues were decided—perhaps at the end of the appeal itself—would be anything but a step in aid of justice; the situation is one which demands some ready means of ascertaining the moment when occurs this "crux of 'taking an appeal.' "[10] The least requirement, which will be tolerable, is that some paper shall be accessible in the records of a court upon which both judges and parties can rely. Crump v. Hill,[11] is entirely in accord with this; the appellant had filed in the district court a paper which indicated his intent to appeal. True, it was a waiver of notice of appeal by the appellee; but that was unanswerable evidence of the appellant's purpose. The appeals of Engel and of Gingold and his wife are dismissed.

■ With these out of the case, the validity of the covenant in the deed of Weiner and Gingold to the Congregation is not before us, for Weiner has not appealed, and the Society was not made a party. The Congregation itself, as mortgagor has no standing vicariously to raise the issue; it has no defense to the mortgage and must suffer the sale in foreclosure of whatever title it held. It would have been absurd to allow it as covenantee to enforce a covenant against itself as covenantor; and if it could not do that, it can have no standing to enforce the covenant against its own grantee, the mortgagee. It results that the judgment is conclusive upon Weiner and Gingold.

■ Nothing remains but the third declaration in the judgment: i.e., that the guarantors are severally liable for $1000 of the debt. The only suggested defence to this liability is that the guaranties were conditional upon the validity of the covenant in the deed of Weiner and Gingold. For this there is no shadow of support; the guaranties were embodied in a formal written instrument, executed when the plaintiff's assignor lent the money to the Congregation, which did not contain a syllable to intimate that the obligation was conditional in any way whatever. The

---

[7] Benitez v. Farran's Estate, 1 Cir., 143 F.2d 435.

[8] Ross v. Drybrough, 2 Cir., 152 F.2d 427.

[9] Civil Practice Act, § 562.

[10] Miller v. United States, 7 Cir., 114 F.2d 267, 268.

[11] 5 Cir., 104 F.2d 36.

only testimony on the subject was that of one, Voit, who described the building erected on the locus in quo, and how intimately it was connected in use with the synagogue. If anything of what he said could by the widest stretch be thought relevant, it was that the Congregation borrowed the money to build this building; but to suppose that this imported as a condition upon the undertaking that the property should always be used for religious purposes, would be in direct conflict with one obvious purpose of the guaranties: i.e., that the guarantors should have the protection of the land. They vaguely suggest that they have some sort of legally protected interest in the enforcement of the covenant; but that too is not true. As members of the Congregation, they have no authority to enforce its rights; and even if they had, the Congregation itself could not enforce the covenant, as we have shown.

Finally, to the objection that the Attorney General of New York, and the Society Chevra Kadisha were not made parties to the action, it is a complete reply that, even though they should have been—which we do not for a moment suggest—the objection did not survive answer. Rule 12(h). The appeals are wholly devoid of any merit.

The first and third declarations in the judgment of June 8, 1945 are affirmed.

The appeals from the second declaration in that judgment are dismissed.