**Walter J. COBB et al., on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,**

**v.**

**Jerry LEWIS et al., Defendants-Appellees.**

**No. 72-2457.**

United States Court of Appeals, Fifth Circuit.

Jan. 9, 1974.

Coleman R. Rosenfield, Hallandale, Fla., Baxter L. Davis, Atlanta, Ga., A. Blenn Taylor, Jr., Brunswick, Ga., Jerry S. Cohen, Herbert E. Milstein, Michael D. Hausfeld, Washington, D. C., Harold E. Kohn, P.A., Philadelphia, Pa., for plaintiffs-appellants.

Edward W. Killorin, Lloyd Sutter, Atlanta, Ga., Simon Rose, Joel M. Leifer,

New York City, for Network Cinema Corp.

Before WISDOM, GEWIN and COLEMAN, Circuit Judges.

WISDOM, Circuit Judge:

This case presents questions relating to the arbitrability of claims arising under the federal antitrust laws. The plaintiffs-appellants [1] brought this suit seeking damages for, among other things, alleged violations by the defendants of the federal antitrust laws. Before the plaintiffs filed suit, the defendants had started arbitration proceedings in New York under a general arbitration clause in the contract between the plaintiffs and the defendants. Shortly after filing of the suit, the district court entered an order granting a motion by the defendants to stay the suit pending arbitration, and refusing a motion by the plaintiffs for a preliminary injunction against the arbitration proceedings. The plaintiffs appeal from this interlocutory order. We reverse.

### I.

On February 12 and December 1, 1970, and on June 10, 1971, the plaintiffs-appellants, owners and operators of motion picture theaters, entered into agreements with Network Cinema Corp., a franchiser of a nationwide chain of motion picture theaters doing business under the name of "Jerry Lewis Cinemas". Under the terms of the agreement, in several Georgia counties Network granted the plaintiffs the exclusive right to operate motion picture theaters under the trade name of "Jerry Lewis Cinemas". In return, the plaintiffs promised to purchase, lease, or otherwise acquire from Network or its designees substantially all the signs, equipment, fixtures, furnishings, motion picture films, and short subjects needed in the course of operation of a Jerry Lewis Cinema. The agreement provided for arbitration of all disputes and stated that all questions arising under the agreement would be governed by New York law.

On December 1, 1971, one of the plaintiffs, Michael Solomon, doing business as Solomon Cinemas, Inc., allegedly defaulted on some of his contractual obligations. On December 15, 1971, Network, alleging numerous breaches of the franchise agreement on Solomon's part, as well as "unfair competition" and "general misrepresentations", served a demand for arbitration. On December 28, 1971, Solomon filed a motion seeking an extension of time for the filing of an answer and counterclaim in the proceeding. By letter dated January 4, 1972, the American Arbitration Association directed that the answer and counterclaim be filed before January 20, 1972.

On January 17, 1972, Solomon filed its answer and counterclaim with the Association. The answer simply denied Network's allegations; the counterclaims alleged fraud in the inducement by Network, failure of consideration, breach of contract on Network's part, and violations by Network of the federal securities and antitrust laws. Solomon's counterclaim was the first mention in the arbitration proceedings of the federal antitrust or securities laws. By letter, January 24, 1972, Solomon requested the Association to appoint a panel of three arbitrators. On January 25, however, counsel for Solomon informed both the Association and Network that Solomon was rejecting any arbitration and revoking "any and all provisions, stipulations and methods for arbitration proceedings and all reference relating thereto in the franchise agreement". Two days later, on January 27, Solomon and two other franchisees of Network, the plaintiffs-appellants here, filed this class action, in their own behalf and in behalf of the class comprising all of Network's franchisees. The complaint

---

1. The plaintiffs-appellants are Karlene H. Cobb and Walter J. Cobb and Family Cinemas, Inc., a Georgia Corporation; Chester A. Strycula and Robert R. Bigelow, d/b/a Gaill Enterprises, Inc.; Michael Solomon and Solomon Cinemas, Inc., a Georgia Corporation.

substantially restated the allegations of Solomon's counterclaim in the arbitration proceeding. It alleged violations by Network of section 1 of the Sherman Act, 15 U.S.C. § 1 (1970) (Count I); violations of section 3 of the Clayton Act, 15 U.S.C. § 14 (1970) (Count II); violations of the Securities Act of 1933, 15 U.S.C. § 77e (1970) by Network's sale of unregistered securities (Count III); common law fraud and misrepresentation (Count IV); violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1970), and of the Securities and Exchange Commission's rule 10b–5, 17 C.F.R. § 240.10b–5 (1972) (Count V); breach of contract and warranty (County VI); and violations of § 2–302 of the Uniform Commercial Code (Count VII). The plaintiffs also requested a preliminary injunction against the New York arbitration proceedings. In its answer, Network denied the appellants' contentions and requested a stay of the suit, under 9 U.S.C. § 3 (1970),[2] pending the outcome of the arbitration proceedings.

On March 1, the district court entered its opinion and order dismissing Counts III and V of the complaint, denying the plaintiffs' prayer for a preliminary injunction of the New York arbitration proceedings, and granting the defendants' application for a stay of the district court suit. The district court's opinion is reported at 339 F.Supp. 96. On March 10, the plaintiffs filed a motion for reconsideration. After the district court denied that motion on May 3, the plaintiffs filed a motion to appeal under 28 U.S.C. § 1292(b). The district court granted this motion, certifying, as required by § 1292(b), that the case raised controlling questions of law as to which there was substantial ground for

difference of opinion. On June 1, 1972, this Court denied the plaintiffs' motion to appeal under § 1292(b), but at the same time entered an order docketing the cause "pursuant to 28 U.S.C. § 1292(a)". Section 1292(a) allows appeals as of right from interlocutory orders of the district courts granting or refusing injunctions. At no time did the plaintiffs-appellants file a notice of appeal in the district court, as required in appeals taken as of right under Rule 3 of the Federal Rules of Appellate Procedure.

II.

At the outset, by motion to dismiss, the appellees raise two jurisdictional issues.

A. First, they contend that the appellants failed to comply with F.R.A.P. 3(a) that requires the filing of a notice of appeal with the clerk of the district court. The appellants argue that Rule 3(a) was satisfied by their filing in this Court, within the time for taking an appeal, of their Petition for Leave to Appeal under 28 U.S.C. § 1292(b) and by this Court's subsequent order denying the plaintiffs' motion but docketing the cause under § 1292(a).

Courts of appeals have discretion, when the interests of substantive justice require it, to disregard irregularities in the form or procedure for filing a notice of appeal. In Crump v. Hill, 5 Cir. 1939, 104 F.2d 36, for example, we refused to dismiss an appeal for failure to file a notice of appeal under F.R.Civ. P. 73(a), the predecessor of F.R.A.P. 3(a): the appellant had filed a copy of the appellees' waiver of service of notice of appeal within the time for filing the appeal, the appellee had entered an appearance, and the appellee had joined

---

2. 9 U.S.C. § 3 provides:
 If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to

arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

the appellant in designating the record on appeal. For the Court, Judge Hutcheson wrote:

It is true that Rule 73 does specifically provide that the only thing necessary to be done to perfect an appeal is to file a notice thereof with the Clerk, making it the duty of the Clerk to see that notice thereof is served, and that a literal compliance with the rule requires timely filing of the notice with the Clerk. The reason for the Rule, however, to set the appeal in motion by mere notice without judicial action, makes it quite clear we think that the appellant, when he procured from appellee and filed, her waiver of notice, her acceptance of designation, and her entry of appearance, just as effectively started his appeal as if he had merely filed the notice of appeal with, and left its service to, the Clerk. It is true enough that the starting of an appeal within the time fixed is jurisdictional and that good practice requires conformity to the formal requirements of the Rule. But it would we think be a harking back to formalistic rigorism of an earlier and outmoded time, as well as a travesty upon justice, to hold the extremely simple procedure required by the Rule is itself a kind of Mumbo Jumbo, and that the failure to comply formalistically with it defeats substantial rights.

104 F.2d at 37–38.

We have also held that an application for leave to appeal in forma pauperis is to be regarded as the equivalent of a notice of appeal. Des Isles v. Evans, 5 Cir. 1955, 225 F.2d 235; Roth v. Bird, 5 Cir. 1956, 239 F.2d 257; Tillman v. United States, 5 Cir. 1959, 268 F.2d 422. Accord, Hoover v. United States, 10 Cir. 1959, 268 F.2d 787; Fitzsimmons v. Yeager, 3 Cir. 1968, 391 F.2d 849. In *Des Isles*, we explained:

The rules have for their primary purpose the securing of speedy and inexpensive justice in a uniform and well-ordered manner; they were not adopted to set traps and pitfalls by way of technicalities for unwary litigants, Alabama Great Southern Railroad Co. v. Johnson, 5 Cir., 1944, 140 F.2d 968. Therefore, substantial compliance with the rules is sufficient, and appellant's petition for leave to appeal in forma pauperis adequately met the requirements of Rule 73(a).

225 F.2d at 236. In Carter v. Campbell, 5 Cir. 1960, 285 F.2d 68, we held that the appellants' application to this Court for leave to proceed upon the original record and our order granting such leave constituted adequate notice of appeal.

Other courts have held that the requirement of notice of appeal is satisfied by a "Brief for Appeal" filed in the Court of Appeals (Frace v. Russell, 3 Cir. 1965, 341 F.2d 901); by a motion for permission to appeal in forma pauperis filed in the Court of Appeals (Gerringer v. United States, 1954, 93 U.S. App.D.C. 403, 213 F.2d 346); by a petition for mandamus filed in the Court of Appeals (Jordan v. United States District Court, 98 U.S.App.D.C. 160, 233 F.2d 362, vacated on other grounds, 1956, 352 U.S. 904, 77 S.Ct. 151, 1 L.Ed.2d 114); by an "Appeal Bond" filed with the District Court (O'Neal v. United States, 5 Cir. 1959, 272 F.2d 412); or by a notice of appeal filed in the Court of Appeals (Richey v. Wilkins, 2 Cir. 1964, 335 F.2d 1). See also Reconstruction Finance Corp. v. Prudence Securities Advisory Group, 1941, 311 U.S. 579, 61 S.Ct. 331, 85 L.Ed. 364.

 These cases teach that the notice of appeal requirement may be satisfied by any statement, made either to the district court or to the Court of Appeals, that clearly evinces the party's intent to appeal. Such a statement accomplishes the two basic objectives of the Rule 3 notice requirement: (1) to notify the Court of the taking of an appeal; and (2) to notify the opposing party of the taking of the appeal. See FDIC v. Congregation Pioley Tzedeck, 2 Cir. 1946, 159 F.2d 163; 9 Moore's Federal Practice ¶ 203.09 at 728. In the instant

case, the plaintiffs filed in this Court, within the time for taking an appeal, a petition for leave to appeal under 28 U.S.C. § 1292(b). We denied the motion but docketed the appeal under 28 U.S.C. § 1292(a)(1). In our judgment, the plaintiffs' petition for appeal nonetheless satisfied the requirement for a notice of appeal. Both the Court and the opposing parties were put on notice of their intent to appeal. Indeed, the petition for appeal is a considerably more informative and formidable document than is an ordinary notice of appeal. And the plaintiffs' failure to file a notice in the district court was a good faith error, resulting from the plaintiffs' reliance on this Court's order directing the appeal under § 1292(a)(1). The plaintiffs appear to have regarded our order as meaning that the appeal had been perfected and that the filing of a notice of appeal in accordance with the letter of Rule 3 would be mere surplusage. The appellees have not shown that they were prejudiced in any way by the appellants' technical noncompliance with Rule 3.

B. Second, the appellees question whether the order of the district court is appealable as a matter of right under 28 U.S.C. § 1292(a)(1). Section 1292(a)(1) confers jurisdiction on the courts of appeals over appeals from "interlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions".

In this situation, where the district court has both denied a stay of arbitration [3], and at the same time granted a stay of a district court suit instituted by the party resisting arbitration, it is proper, for the purposes of determining appealability under § 1292(a)(1), to treat the order of the district court as an order granting a stay of the district court suit. This was the course taken by the Second Circuit in American Safety Equipment Corp. v. J. P. Maguire & Co., 1968, 391 F.2d 821, a case on all fours with this case as far as the appealability issue is concerned. The question here is whether the order granting a stay is an "interlocutory order . . . granting [an] injunction" within the meaning of § 1292(a)(1). In Jackson Brewing Co. v. Clarke, 5 Cir., 303 F.2d 844, cert. denied, 1962, 371 U.S. 891, 83 S.Ct. 190, 9 L.Ed.2d 124, we formulated the test for determining whether an order granting a stay of the suit is appealable under § 1292(a)(1): if the claim involved is a legal claim, the order is appealable; if it is an equitable claim, the order is not appealable. This is a matter of settled law [4]. The plaintiffs' claims here, for damages under the common law and the antitrust laws, were of course legal claims; the order granting the stay was therefore appealable under § 1292(a)(1).

We pass now to the merits of the appeal.

---

3. The plaintiffs in this case labelled the relief they sought a "temporary injunction" of the arbitration proceedings, rather than a "stay of arbitration"; and in its opinion, the district court spoke of denying the "temporary injunction", rather than denying a "stay". The difference of terminology is of no consequence, however. The authorities cited in the text and in note 4 *infra* typically refer to an action like the district court's here as a denial of a stay of arbitration, and so we refer to the court's order here as a denial of a stay, rather than of a temporary injunction. In any event, the question of jurisdiction under § 1292(a)(1) does not of course turn on differences in terminology.

4. American Safety Equipment Corp. v. J. P. Maguire & Co., 2 Cir. 1968, 391 F.2d at 825. See the cases cited in Jackson Brewing Company, 303 F.2d at 845–846 n. 1, especially Enelow v. New York Life Insurance Co., 1935, 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440; Ettelson v. Metropolitan Insurance Co., 1941, 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176; Morgantown v. Royal Ins. Co., 337 U.S. 254, 69 S.Ct. 1067, 93 L.Ed. 1347; Baltimore Contractors v. Bodinger, 1955, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233. See generally 9 Moore's Federal Practice, ¶¶ 110.20[3], [4.–1] (2) at 240–46, 247–48

## III.

Within the last five years, three of the circuit courts of appeals, the Second, Eighth, and Ninth Circuits, have addressed questions of the appropriateness of arbitration of issues arising under the federal antitrust laws. All three have decided that claims under the antitrust laws are "of a character inappropriate for enforcement by arbitration", American Safety Equipment Corp. v. J. P. Maguire & Co., supra, 391 F.2d at 825, quoting Wilko v. Swan, 2 Cir. 1953, 201 F.2d 439, 444, rev'd, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168. Accordingly they have fashioned what the district court in this case characterized as a "general rule to the effect that antitrust claims are not subject to arbitration". 339 F.Supp. at 99, citing American Safety Equipment Corp., supra, 391 F.2d at 825; A & E Plastik Pak Co. v. Monsanto Co., 9 Cir. 1968, 396 F.2d 710; Power Replacements, Inc. v. Air Preheater Co., 9 Cir. 1970, 426 F.2d 980; see Helfenbein v. International Industries, Inc., 8 Cir. 1971, 438 F.2d 1068. See also Matter of Aimcee Wholesale Corp., 1968, 21 N.Y.2d 621, 289 N. Y.S.2d 968, 237 N.E.2d 223 (issues under New York and federal antitrust laws non-arbitrable in New York as a matter of New York law).

The American Safety Equipment Corp. case outlined three major considerations supporting this rule. The first is the broad range of public interests affected by private antitrust claims. The Court recognized that "[a] claim under the antitrust laws is not merely a private matter", because private antitrust actions are an integral part of the effort of the antitrust laws "to promote the national interest in a competitive economy". 391 F.2d at 826. The Second Circuit noted that it is doubtful Congress could have "intended such claims to be resolved elsewhere than in the courts". Id. at 827. The second is the complexity of the issues and the extensiveness and diversity of the evidence antitrust cases usually involve. These render antitrust claims "far better suited to judicial than to arbitration procedures". Id. The third is the questionable propriety of entrusting the decision of antitrust issues to commercial arbitrators, who "are frequently men drawn for their business expertise", when "it is the business community generally that is regulated by the antitrust laws". Id. at 827.

We are persuaded by these considerations. We agree that "the pervasive public interest in enforcement of the antitrust laws, and the nature of the claims that arise in such cases, combine to make the outcome . . . clear", American Safety Equipment Corp., 391 F.2d at 828. Accordingly, we join the Second, Eighth, and Ninth Circuits in holding here that, as a general matter, antitrust claims are not appropriate subjects of arbitration.

This, however, does not conclude the question in this case. For, as the district court recognized, there is appropriately an "exception" to this "rule" against arbitration of antitrust issues for situations "when the agreement to arbitrate is made after the dispute arises". 339 F.Supp. at 99.

Support for such an "exception" comes from several sources. One is dictum in the circuit court cases adopting the "rule": both American Safety Equipment Corp. and Power Replacements, Inc., expressly left open the question whether post-controversy agreements to arbitrate would be enforceable. 391 F.2d at 827; 426 F.2d at 984. Another support is a pair of cases involving claims under the federal securities acts. Claims under the securities acts have been held inappropriate for arbitration under the Supreme Court's decision in Wilko v. Swan, 1953, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168. Two cases, however, have held that this rule does not apply to agreements to arbitrate specific disputes. In Moran v. Paine, Webber, Jackson, and Curtis, 1968, 389 F.2d 242, the Third Circuit refused to disturb an arbitral award that had already been handed down, when the proceeding had been held un-

der a special agreement the plaintiff had made with the brokerage house to arbitrate a particular claim under the federal securities laws. This Court adopted the holding of *Moran* in a short per curiam opinion in a case involving facts virtually identical to *Moran's*, decided under Local Rule 18. Gardner v. Shearson, Hammill & Co., 1970, 5 Cir., 433 F. 2d 367.

The other authority supporting the exception is the Second Circuit's decision in Coenen v. Pressprich & Co., 1970, 453 F.2d 1209. In that case, the plaintiffs had formed a company that had, in the time after the dispute had arisen, become a member of the New York Stock Exchange. The defendant was also a member of the Exchange; and the Exchange Constitution, which by federal law "constitute[s] a contract between all members of the exchange with each other and with the exchange itself" (Brown v. Gilligan, Will & Co., S.D.N.Y.1968, 287 F.Supp. 766, 769) contains a provision requiring arbitration of all disputes arising between member firms. NYSE Constitution, Art. VII, § 1. The defendant in *Coenen* invoked this clause to demand arbitration. The Second Circuit held arbitration appropriate, because the agreement to arbitrate contained in the Exchange Constitution had been "made" after the controversy had arisen. In support of its holding, the Court stated that "here the agreement to arbitrate may be regarded as an agreement to arbitrate a specific existing dispute". 453 F.2d at 1215.

The district court's order here rested on the court's conclusion that this case fitted within the "exception" that emerges from these lines of authority. In reaching this conclusion, the district court placed primary emphasis upon the fact that it was the plaintiffs who, by including their antitrust counterclaims in their January 17, 1971, answer in the arbitration proceedings, first sought to inject antitrust issues into the arbitration proceedings. The defendants' demand for arbitration had concerned only alleged breaches of contract by the plaintiffs. This, the court said, apparently borrowing language from the *Moran* case, constituted a "voluntary submission of an existing anti-trust controversy to arbitration", 339 F.Supp. at 99, and sufficed to render inapplicable the general rule against the arbitration of antitrust questions. As additional support for its ruling, the district court took note in the margin of its opinion of § 7503(c) of the New York Civil Practice Law Rules, McKinney's Consol. Laws, c. 8. That section provides that a party shall be precluded from objecting to the validity of an arbitration proceeding unless he applies for a stay of arbitration within 10 days of being served a notice of arbitration. This the Court read as meaning that under New York law, the failure to file is "apparently treated as an admission of the validity of the arbitration agreement and as a voluntary submission to arbitration". 339 F.Supp. at 100 n. 3.

Although we agree and hold that there is an exception to the rule against arbitration of antitrust issues for cases where an agreement to arbitrate is made *after* a dispute arises and with respect to the specific controversy at hand, we conclude that the district court erred in deciding that this case was an appropriate one for the application of that exception. As a preliminary matter, it is necessary to note that this case falls within a class of cases distinguishable from the class the *Power Replacements* and *American Safety Equipment Corp.* courts seem to have had in mind in their dicta about the exception. Those courts seemed to have had in mind situations where the parties made an express agreement to arbitrate after the dispute had arisen, an agreement that referred specifically to the controversy in question. The *Moran* and *Gardner* cases typify this class exactly. Here, however, there was no express agreement made after the dispute arose; the only express agreement was the general arbitration clause in the original contract.

The rationale for invoking the exception here, therefore, was different from that in cases such as *Moran* and *Gardner*: Solomon, by his participation in the arbitration proceeding, essentially "waived" his right to challenge the propriety of arbitrating the federal antitrust issues. His participation constituted an implied or *de facto* agreement to arbitrate the specific dispute which had arisen; cases where such an "implied" agreement could be found would compose a second class of cases calling for the application of the "exception" to the *Power Replacements–American Safety Equipment* rule.

■ We have no quarrel with the proposition that the exception should apply to such a class of cases. At some point a party's participation in an arbitral proceeding, if it goes far enough, must be held to constitute an agreement to arbitrate. Otherwise a party could avoid any responsibility for choosing a forum to hear his claims: he could simply go along with the arbitration proceeding, hoping for a favorable award, but secure in the knowledge that any award may be attacked successfully in court if it should prove unfavorable. We disagree with the district court here only in our judgment that the acts of the plaintiffs in this case were not sufficient to constitute a *de facto* agreement to arbitrate the specific controversy. In making this judgment, we have in mind the underlying rationale of the exception. The Second Circuit articulated that rationale in *Coenen*:

> The courts give as reason for this [exception] that the parties already know just what they are agreeing to arbitrate, and also that, as a claimant is not required to sue and is always free to settle a private triple-damage antitrust case, his agreement to arbitrate is in effect an agreement to settle the dispute.

453 F.2d at 1215. See also Pitofsky, Arbitration and Antitrust Enforcement, 44 N.Y.U.L.Rev. 1072, 1079–80 n. 31

(1969). This rationale conditions our view of what is required before a court may decide that the actions of a party resisting arbitration constitute a *de facto* agreement to arbitrate a particular dispute. What is required is that the party's conduct evidence in some way that the party has made an informed, deliberate, and explicit decision to have his antitrust claims arbitrated, comparable to the kind of decision which would be represented either by a decision to settle or by a decision to enter into an express agreement to arbitrate. We think that this test is necessary to fulfill the underlying policies favoring judicial disposition of antitrust issues.

Here, we think it impossible to say that this standard was met. Neither Solomon's introduction of the antitrust issues in his counterclaim, nor his failure to seek a stay of arbitration within the time prescribed by New York's procedural rule, establishes that he made the kind of eyes-open choice necessary to suspend the operation of the rule against arbitration of antitrust questions. Network was scarcely prejudiced by Solomon's short, one-month delay in electing to have his antitrust claims heard in court. And his right to have them heard there could not be waived by his noncompliance with a restrictive procedural requirement of state law, designed to serve policies other than the federal antitrust policies of concern in this context.

■ The district court gave a second reason for staying the suit without deciding the antitrust issues. It said that, even assuming those issues were non-arbitrable, they were so insubstantial a part of the case that it was proper for the court to exercise its discretion in granting a stay until the more substantial, concededly arbitrable issues of the case were decided by arbitration. The appellees advance this argument as an alternative ground for affirming the district court. We cannot, however, agree with the district court's finding that "the preponderating bulk of the dis·

pute appears to concern defendant's claims of debt and plaintiff's defenses, primarily fraud, thereto", or its conclusion that "[u]nder such circumstances . . . the antitrust defenses have only meagre chances of success". We view the antitrust issues as permeating the entire case, and conclude that they have a reasonable chance of success. It does not appear to us that it would be easy for an arbitrator to separate the antitrust issues from the other issues in the case, and to proceed to decide the arbitrable issues without inquiry into the antitrust issues. Consequently, we hold that it was improper for the district court to grant a stay of the suit on this ground.

Reversed and remanded to the district court for further proceedings consistent with this opinion.

COLEMAN, Circuit Judge (dissenting):

I regret that I must dissent.

I am convinced beyond any shadow of a reasonable doubt that this Court stands, starkly, without jurisdiction of this appeal.

The chronology of the matter is that:

On May 3, 1972, the District Court entered an order which determined with finality that a preliminary injunction would be denied and a stay of the suit would be granted.

The petitioners sought leave to appeal from this interlocutory order, 28 U.S.C., § 1292(b). On June 5, 1972, a panel of this Court [Judges Bell, Dyer, and Clark] denied the requested leave.

Apparently, however, the panel was under the impression that petitioners had filed notice of appeal from the denial of the preliminary injunction, 28 U. S.C. § 1292(a). Accordingly, the panel further ordered that "this cause be docketed pursuant to 28 U.S.C., § 1292(a)".

The fatal difficulty is that no such notice had been attempted, much less filed. While the Judges did not know this, the petitioners certainly did.

Under Rule 4(a) of the Federal Rules of Appellate Procedure, the petitioners could as a matter of right have filed the required notice on or before June 3. Upon a showing of excusable neglect, an extension could have been sought at any time prior to July 2. This they made no effort to do.

In the absence of a notice of appeal the panel was without jurisdiction to order the case docketed under § 1292(a). A petition for leave to appeal is an entirely different animal from a notice of appeal taken as a matter of right.

While the answer to this can never be known, I doubt seriously that the panel would have entered the order to docket under § 1292(a) if it had been made aware that an indispensable jurisdictional prerequisite was entirely non-existent.

In any event, these petitioners had from June 3 to July 2, almost thirty days, in which to have sought the extension allowed by the Rule.

Despite all this, my Brethren hold that we have jurisdiction. This is done, apparently, on the theory that since the panel, in an administrative order, directed the transfer the petitioners ought to be allowed to rely on it. In the oft used words of our late Brother Hutcheson, "This will not do". Courts cannot confer jurisdiction upon themselves simply by ordering it. Courts of the United States have no jurisdiction except that conferred upon them by constitution or statute. Most assuredly, they cannot exercise jurisdiction in contravention of an express statute.

This is not a criminal prosecution and notice of appeal has not been frustrated or delayed by imprisonment, fraud, or other factors beyond the control of the appellant. In the absence of such complications, most certainly in a civil case, the lack of a notice of appeal within thirty days, or a permissible extension of time Rule 4(a) F.R.A.P., the Court of Appeals is without jurisdiction.

For some of *our* most recent cases so holding, see Lawrence v. Wainwright, 5

Cir., 1968, 401 F.2d 177; Gann v. Smith, 5 Cir., 1971, 443 F.2d 352; Jackson v. Decker, 5 Cir., 1971, 451 F.2d 348; Smith v. Southern Bell Telephone Co., 5 Cir., 1972, 460 F.2d 279; Gulf-Tampa Drydock Co. v. Vessel Virginia Trader, 5 Cir., 1970, 435 F.2d 150.

The opinion of the Court says that "Courts of appeals have discretion, when the interests of substantive justice require it, to disregard irregularities in the form or procedure for filing a notice of appeal", but this case involves no irregularity. There was no notice of appeal, whatever, even though there was a Petition for Leave to Appeal under an entirely different subsection of the applicable statute. I must confess that I am considerably alarmed by subsequent language of the opinion which would lead both the unwary and the subtle to believe that the plainly written, clearly understandable requirements for the attachment of appellate jurisdiction are easily to be circumvented, if a Court should be of the mind to permit it.

I must also point to my disagreement with the "finding of fact" [Page 46 of the Opinion] that the "plaintiffs' failure to file a notice in the district court was a good faith error, resulting from the plaintiffs' reliance on this Court's order directing the appeal under § 1292(a)(1)". We, of course, are not a fact finding tribunal. If we were, I would point out that the thirty day period for filing the required notice of appeal expired before the entry of the Transfer Order in this Court. If appellants could act in good faith on an occurrence that had not yet taken place they must be congratulated upon the possession of a prescience rarely encountered in human experience.

After all, this appeal is from an interlocutory order and a final hearing on the merits, with the subsequent right of appeal, is yet in the wings.

I would dismiss for lack of jurisdiction.