**POWER REPLACEMENTS, INC., and Max Wheeler, Plaintiffs-Appellants,**

v.

**AIR PREHEATER CO., Inc. and Combustion Engineering, Inc., Defendants-Appellees.**

**No. 23312.**

United States Court of Appeals, Ninth Circuit.

May 6, 1970.

O. R. Rouse (argued), of Rouse & Hamilton, Palos Verdes Estates, Cal., for appellants.

Charles C. Parlin, Jr. (argued), of Latham & Watkins, Los Angeles, Cal., Richard H. Troy, of Shearman & Sterling, New York City, for appellees.

Before ELY and CARTER, Circuit Judges, and JAMESON*, District Judge.

JAMESON, District Judge:

This is an appeal from an order denying motions of plaintiffs-appellants for a preliminary injunction and abatement of arbitration proceedings and granting a motion of defendants-appellees for a stay pending completion of the arbitration proceedings. Two questions are presented: (1) whether the order is appealable under 28 U.S.C. § 1292(a) (1); and (2) whether an agreement to arbitrate claims arising out of violations of the antitrust laws of the United States may be enforced.

Prior to 1962 appellee Air Preheater Co., Inc., was the sole manufacturer of an air preheater replacement element used by private industry and private and public utility companies. In 1962 appellant Power Replacements, Inc., was organized in California and began manufacturing and selling the element in competition with Air Preheater.

In April, 1965, Power Replacements filed a private antitrust action against Air Preheater and its parent company,

* Honorable William J. Jameson, United States Senior District Judge, Billings, Montana, sitting by designation.

Combustion Engineering, Inc., in the United States District Court for the Southern District of California. The complaint alleged that defendants had violated the federal antitrust laws and engaged in unfair competition through discriminatory predatory pricing activities directed toward eliminating Power Replacements as a competitor.

On August 2, 1965, Power Replacements, Inc. and Max Wheeler, its president and majority stockholder, executed a settlement agreement with Air Preheater and Combustion. Pertinent provisions of the agreement read:

> "WHEREAS, all parties to this Agreement wish to settle their existing disputes and to agree upon an expeditious method of resolving any similar disputes between them arising during the next two years; * * *."
>
> " * * *
>
> "8. Power Replacement agrees that it, or any of its agents, will not:
>
> (a) Solicit directly any employee of Air Preheater for the purpose of persuading the employee to become an employee of Power Replacement or any business enterprise affiliated with Power Replacement; or
>
> (b) Engage in any practice in the course of competing with Air Preheater which would violate any Federal or State antitrust law; or
>
> (c) Engage in any practice in the course of competing with Air Preheater which would constitute unfair competition or trade libel under the law of either California or New York.
>
> "9. Air Preheater agrees that it, or any of its agents, will not:
>
> (a) Solicit directly any employee of Power Replacement for the purpose of persuading said employee to become an employee of Air Preheater or any business enterprise affiliated with Air Preheater; or
>
> (b) Engage in any practice in the course of competing with Power Replacement which would violate any Federal or State antitrust law; or
>
> (c) Engage in any practice in the course of competing with Power Replacement which would constitute unfair competition or trade libel under the law of either California or New York.
>
> "10. Any Claim that there has been a violation of Paragraphs 8 or 9 of this Agreement on or before August 2, 1967, shall be settled by arbitration before a single Arbitrator in accordance with the Commercial Arcan Arbitration Association, and judgment upon the award rendered by the Arbitrator may be entered in any Court having jurisdiction.
>
> "11. Any such arbitration shall be held in either Los Angeles, California, or New York, New York, at the election of the party upon whom the demand for arbitration is made.
>
> "12. The amount of the award in any arbitration hereunder shall be limited to the actual damages sustained by the party demanding arbitration. The recovery prescribed by Section 4 of the Clayton Act (15 U.S.C.A., Section 15) or any comparable State Statute shall not apply.
>
> "13. In any arbitration under this Agreement, neither expenses nor counsel fees shall be included in any award. The Arbitrator shall, however, direct that all administrative fees be borne by the losing party to the arbitration."

During the year 1966 Power Replacements Corporation, a Pennsylvania corporation, was organized by Wheeler for the purpose of manufacturing and selling the element in competition with appellees in the eastern part of the United States. On October 9, 1967, Power Replacements Corporation filed an action in the United States District Court for the Eastern District of Pennsylvania alleging that Air Preheater and Combustion had engaged in a course of conduct violative of the antitrust laws. On November 24, 1967, Air Preheater and Combustion submitted to appellant Power Replacements Inc., a demand for arbitration. Pursuant to this demand, arbitration proceedings were instituted through the American Arbitration Association. On December 8, 1967, motions to stay proceedings in Pennsylvania pending arbitration and to compel arbitration were denied.[1]

On January 17, 1968, appellants filed this action in the Superior Court of the State of California for the County of Los Angeles, seeking rescission of the agreement of August 2, 1965, damages, and injunctive relief. Appellees removed the action to the United States District Court for the Central District of California. Without conceding that the American Arbitration Association had jurisdiction, Power Replacements Inc. elected to have the arbitration proceedings transferred to the Los Angeles office of the American Arbitration Association.

Appellants filed a motion for a temporary restraining order and preliminary injunction. A temporary restraining order was granted on April 18, 1968. Appellants also filed a motion for abatement of the arbitration proceedings, and appellees filed a counter motion to abate the proceedings in the district court and compel arbitration. On April 24, 1968, appellants filed an amended complaint which added a cause of action seeking to have paragraphs 10, 11, 12 and 13 of the agreement, quoted supra, declared illegal and unenforceable. The district court entered an order granting defendants-appellees' motion for a stay pending arbitration and denying plaintiffs-appellants' motions for a preliminary injunction and abatement of the arbitration proceedings.

Appellees contend that this order was not appealable. 28 U.S.C. § 1292(a) (1) gives a court of appeals jurisdiction of appeals from: "(1) Interlocutory orders of the district courts of the United States * * * granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions * * * *".

In A. & E. Plastik Pak Co. v. Monsanto Company, 1968, 396 F.2d 710, 713, this court held appealable an order denying a temporary injunction seeking to abate arbitration. After noting that the denial was not just a stay granted through exercise of the court's inherent power to control its own proceedings, we said:

"* * * Here the court was asked (and declined) affirmatively to interfere with proceedings in another forum; to exercise its equity powers to halt action of its litigants outside of its own court proceedings—the classic form of injunction. That arbitration is not a mere extension of court proceedings but involves a separate tribunal seems clear from Bernhardt v. Polygraph[ic] Co. of America, 350 U.S. 198, 202–203, 76 S.Ct. 273, 100 L.Ed. 199 (1956)." [2]

---

1. Appellees assume that Power Replacement Corporation is an alter ego of Power Replacements, Inc. Appellants argue that the denial by the District Court of Pennsylvania of Air Preheaters' motion to compel arbitration was an implicit rejection of appellees' contention. The question is not otherwise raised and need not be resolved in determining this appeal.

2. Other cases in this circuit which have considered the appealability of orders granting or denying motions to stay proceedings pending arbitration, under different factual situations, include Chronicle Publishing Co. v. National Broadcasting Co., 1961, 294 F.2d 744; Alexander v. Pacific Maritime Ass'n., 1964, 332 F.2d 266, cert. denied 379 U.S. 882, 85 S.Ct. 150, 13 L.Ed.2d 88; and Beckley v. Teyssier, 1964, 332 F.2d 495.

It was noted in footnote 2 that if instead of declining to "stay" arbitration, the district court had chosen to "order its own proceedings stayed pending arbitration, the stay order would have been deemed an injunction and appealable", citing American Safety Equipment Corp. v. J. P. Maguire & Co., 2 Cir. 1968, 391 F.2d 821.

▪ Both A. & E. Plastik Pak and American Safety involved the validity of agreements providing for arbitration of claims arising under the antitrust laws of the United States. The same is true here. The order in this case (1) granted a stay of the court's own proceedings pending arbitration; (2) denied abatement of the arbitration proceedings; and (3) denied a temporary injunction. The order was appealable.[3]

Is the agreement to arbitrate valid and enforceable? This question is answered in the negative by our decision in A. & E. Plastik Pak Co. v. Monsanto Company, supra,[4] and the two cases there cited, American Safety Equipment Corp. v. J. P. Maguire & Co., supra, and Aimcee Wholesale Corporation v. Tomar Products, Inc., 1968, 21 N.Y.2d 621, 289 N.Y. S.2d 968, 237 N.E.2d 223 (holding state antitrust claims not arbitrable).

In A. & E. Plastik Pak we recognized that, "Where the validity of a contract is challenged upon the ground of fraud, the issue of fraud is a proper subject of arbitration;"[5] but held that "whether a contract is valid under the federal antitrust laws is not an arbitrable issue." 396 F.2d at 715, 716. A. & E. Plastik Pak involved other issues, which we held

arbitrable, but with respect to the antitrust claim we said:

"The same cannot be true of the fourth issue presented for arbitration: the existence and extent of the technology within the knowledge of Evans which Monsanto can rightfully claim as privately controlled. This (together with Monsanto's purpose) is the crucial factual antitrust issue, for without such technology as a basis no restriction on competition could be valid as an ancillary restraint. Public interest attaches to the ascertainment of the truth as to this issue. Such issues the parties cannot, by stipulation or otherwise, exclude from the area of judicial scrutiny and determination." 396 F.2d at 716.

In American Safety Equipment Corp. v. J. P. Maguire & Co., supra, the court recognized the "clash of competing fundamental policies * * *: the conflict between federal statutory protection of a large segment of the public, frequently in an inferior bargaining position, and encouragement of arbitration as a 'prompt, economical, and adequate solution of controversies.'"[6]

The court continued in part:

"A claim under the antitrust laws is not merely a private matter. The Sherman Act is designed to promote the national interest in a competitive economy; thus, the plaintiff asserting his rights under the Act has been likened to a private attorney-general who protects the public's interest. * * *

"* * * the claim here is that the agreement itself was an instrument of

---

3. In view of our conclusion that the holdings in A. & E. Plastik Pak and American Safety are applicable, we do not deem it necessary to review other cases involving the appealability of orders granting or denying a stay of arbitration proceedings. See discussion in Wright Federal Courts 2d Ed. (1970) § 102, pp. 458, 461.

4. The order from which the appeal was taken in the instant case was entered

prior to our decision in A. & E. Plastik Pak, so that the district court did not have the benefit of our holding in that case.

5. Citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 1967, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270.

6. Citing Wilko v. Swan, 1953, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168.

illegality; in addition, the issues in antitrust cases are prone to be complicated, and the evidence extensive and diverse, far better suited to judicial than to arbitration procedures. Moreover, it is the business community generally that is regulated by the antitrust laws. Since commercial arbitrators are frequently men drawn for their business expertise, it hardly seems proper for them to determine these issues of great public interest." (391 F.2d at 826, 827).

Appellees argue that A. & E. Plastik Pak, American Safety, and Aimcee are distinguishable in that (1) they involved general arbitration clauses and not a specific agreement to arbitrate an antitrust claim; (2) did not involve an agreement to arbitrate after a controversy had already arisen; and (3) since the parties could resolve the dispute by settlement, they could also do so by arbitration.

With respect to all of these contentions, it is clear that the parties did more than agree to arbitrate existing disputes.[7] They expressed a "wish" not only to settle existing disputes but to agree upon a method of resolving "any similar disputes * * * during the next two years." Each party agreed that it would not "Engage in any practice in the course of competing * * * which would violate any Federal or State antitrust law" and would submit to arbitration any violation of this agreement. The alleged violations which form the basis of this action were acts in a different part of the country and committed after the settlement agreement was executed. In other words, those controversies had not yet arisen and could not come within the exception urged by appellees.

■ The analogy to settlement is applicable only with respect to claims in existence at the time of the agreement. The parties knew what claims were then being submitted to arbitration. This is not true as to any possible claim in violation of the antitrust laws which might arise during the ensuing two year period.[8] Nor does the time limitation justify a different rule. Controlling is the fact that the parties agreed to arbitrate antitrust claims which were not in existence and the nature and effect of which were unknown when the agreement was made.[9]

Reversed and remanded for further proceedings consistent with this opinion.

---

7. The agreement was not limited to existing claims which might come to light during the ensuing two year period.

8. This point was well expressed by Professor Robert Pitofsky at a symposium on "Arbitration and Antitrust" at the Association of the Bar of the City of New York on April 8, 1969, 44 N.Y.U.L.Rev. 1069, 1079 (Dec. 1969): "It might be argued that parties are always free to settle a litigation on whatever terms they see fit, and therefor it follows they can do the lesser thing (less in the sense of undermining the public interest by essentially private disposition) and thus agree to submit a case to arbitration. However, the emphasis on the 'settlement' analogy is misplaced when used to uphold application of broad arbitration clauses to antitrust disputes that have not yet arisen. With respect to settlement, the events leading up to the controversary have already occurred; hence there is no problem (as there often would be with arbitration clauses) of a party, because of unequal bargaining power, agreeing to a waiver of future rights without knowing exactly what those rights will be."

9. In general the remarks at the symposium referred to in note 8 were in accord with the rules set forth in the cases supra. The General Counsel of the American Arbitration Association urged a re-examination of the decisions holding arbitration and antitrust incompatible and suggested that the decision of the district court in this case "had much to commend it". In referring to the present state of the law, however, he said: "There is almost unanimous concurrence by ample judicial authorities that arbitrators are not permitted to resolve violations of antitrust laws, and it makes no difference whether the dispute involves a collective agreement, or whether state or federal antitrust policy is under consideration. Academicians and commentators are content with leaving the 'mystiques' of arbitration and antitrust as singular and incompatible." (44 N.Y.L.Rev. at 1097).