Dale S. COENEN, Plaintiff,

v.

R. W. PRESSPRICH & CO., Inc. and Stirling Homex Corporation, Defendants.

No. 71 Civ. 724.

United States District Court,
S. D. New York.

April 22, 1971.

---

Royall, Koegel & Wells, New York City, for plaintiff; David F. Dobbins and Thomas W. Towell, Jr., New York City, of counsel.

Winthrop, Stimson, Putnam & Roberts, New York City, for defendant R. W. Pressprich & Co., Inc.; Stephen A. Weiner and Arnold S. Anderson, New York City, of counsel.

METZNER, District Judge.

Defendant R. W. Pressprich & Co., Inc., moves to stay all proceedings in this action pending arbitration of the disputes between the parties.

Plaintiff is the principal stockholder of Coenen & Co., Inc., a broker-dealer and investment banking firm. During the period from July 1968 to July 1969 he was a member of the board of directors of defendant Stirling Homex Corporation, and personally purchased 90,000 shares of its stock. The certificates contained the standard restrictive "investment" legend.

Sometime during the summer of 1970 the subject matter of this lawsuit came into being. The dispute revolves around the refusal of Stirling, with the claimed connivance of Pressprich, to permit the plaintiff to transfer his stock free of the restrictive legend. Subsequently the legend was removed, but only in connection with an alleged fraudulent scheme which forced the plaintiff on September 25, 1970 to sell the stock at what he claims was an unconscionably low price.

As far as can be ascertained from the papers, there was no indication until January 6, 1971 that plaintiff intended to assert a claim for damages. On that date the attorney for the plaintiff sent a letter to Pressprich. It contained a copy of the complaint which counsel had been instructed by plaintiff to file against the defendants and asked if there was any possibility of settling the matter.

On December 31, 1970 plaintiff had become an allied member of the New York Stock Exchange. Pressprich is a member of the Exchange.

Membership in the Exchange embraces a pledge to abide by its constitution. Article VIII, § 1, of that document provides in part:

"Any controversy between parties who are members, allied members, member firms or member corporations shall, at the instance of any such party, * * * be submitted for arbitration, in accordance with the provisions of the Constitution and the rules of the Board of Governors."

It has been held that a claim by one member that he has been libeled by another is an arbitrable "controversy" under this provision. Osborne & Thurlow v. Hirsch & Co., 10 Misc.2d 225, 172 N. Y.S.2d 522 (1958). In that case the claimed libel occurred while plaintiff was a member of the Exchange, but the action was instituted after he resigned from the organization.

The issue here is whether the contractual agreement, evidenced by membership in the Exchange (Garfield & Co. v. Wiest, 432 F.2d 849 (2d Cir.

1970), cert. denied, 401 U.S. 940, 91 S. Ct. 939, 28 L.Ed.2d 220 (March 2, 1971)), is applicable where the claimed cause of action arose before the plaintiff became a member, but the first attempt to enforce any rights was made after he became a member.

It appears to me that a person aware of possible claims against another is bound by any subsequent agreement to arbitrate disputes between them which is knowingly entered into. It is obvious from the papers that plaintiff is a sophisticated person and clearly understood his responsibilities when he applied for membership. Furthermore, his claim grows out of a series of circumstances in which he was personally involved. I do not have to reach the question of what the law would be if the complaint had been filed before plaintiff became an allied member of the Exchange.

Consequently, it is clear that the first cause of action either at common law or under the Uniform Commercial Code presents arbitrable issues under the constitution of the Exchange.

■ Plaintiff's second cause of action arises under § 10(b) of the Securities Exchange Act of 1934. § 29(a) of this Act renders void certain agreements to arbitrate disputes between the parties arising under the 1934 Act. Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L. Ed. 168 (1953). *Wilko* dealt with § 14 of the Securities Act of 1933, but the language of § 14 is virtually identical to the language of § 29(a).

In the *Wilko* case the Court expressly limited its holding to agreements to arbitrate entered into prior to the existence of a controversy. It left open the question presented by the instant claim.

In Pearlstein v. Scudder & German, 429 F.2d 1136, 1143 (2d Cir. 1970), the court indicated that a contract to arbitrate, knowingly entered into after an active controversy has arisen, is enforceable. See also Moran v. Paine, Webber, Jackson & Curtis, 389 F.2d 242 (3d Cir. 1968).

Such a contract is compatible with the purpose of protecting the public inherent in the 1934 Act. It is not rendered void by § 29(a). The second claim is subject to the arbitration clause in the constitution of the Exchange.

■ Plaintiff's third claim is that defendants conspired to restrain and monopolize trade in the market of the common stock of Stirling. §§ 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2).

It is clear that antitrust claims are not ordinarily issues for arbitration. The wrong sought to be corrected is of national interest in a free economy and does not merely constitute the violation of an individual's rights. American Safety Equipment Corp. v. J. P. Maguire & Co., 391 F.2d 821, 826 (2d Cir. 1968). Provisions for submission to arbitration, in the very same contract that gave rise to the antitrust claim, have been uniformly held unenforceable. Power Replacements, Inc. v. Air Preheater Co., 426 F.2d 980 (9th Cir. 1970); American Safety Equipment Corp., *supra*.

But none of these decisions involve arbitration of a securities dispute that arose before the arbitration agreement was signed. In American Safety Equipment Corp., *supra*, 391 F.2d at 827, the court specifically stated that, " * * * we do not deal here with an agreement to arbitrate made after a controversy has already arisen. [Citing *Wilko*]."

Submission to arbitration is comparable to settlement if the claim arose before the arbitration agreement was signed. Power Replacements, Inc., *supra*, 426 F.2d at 984. In such situations the rights of the parties are fixed and not subject to economic pressure and unequal bargaining power. Arbitration and Antitrust Enforcement, 44 N.Y.U. L.Rev. 1072, 1079–80 & n. 31 (1969). In the present case the plaintiff knew before he became a member of the Exchange that he had a possible claim against the defendant. Plaintiff's antitrust claim is therefore arbitrable.

Motion granted. So ordered.