James A. **BUFFLER** and Electronic Computer Institute of Knoxville, Inc., Plaintiffs-Appellees,

v.

**ELECTRONIC COMPUTER PROGRAMMING INSTITUTE, INC., et al.,** Defendants-Appellants.

No. 72–1082.

United States Court of Appeals, Sixth Circuit.

Aug. 30, 1972.

Claude K. Robertson, Knoxville, Tenn., Fowler, Rowntree, Fowler & Robertson, Knoxville, Tenn., on brief; Lowenthal, Landau & Fischer, New York City, of counsel, for defendants-appellants.

Robert G. McDowell, Knoxville, Tenn., Baker, Worthington, Crossley & Stansberry, Knoxville, Tenn., Robert L. Crossley, Knoxville, Tenn., on brief, for plaintiffs-appellees.

Before CELEBREZZE, McCREE and MILLER, Circuit Judges.

CELEBREZZE, Circuit Judge.

On June 15, 1966, Plaintiffs-Appellees (hereinafter Buffler) entered into two franchise agreements with Defendants-Appellants (hereinafter ECPI), under which Buffler was to operate a computer training school as the exclusive franchisee of ECPI in Eastern Tennessee.

Under the agreements Buffler was required to pay ECPI initial franchise fees totalling $9,750.00 and a royalty of six percent of the gross tuition receipts. In exchange for these payments, Buffler was to receive from ECPI franchise rights and certain specified goods and services related to the operation of the local computer training school. The agreements provided for an initial franchise term of five years, with renewals for successive five-year terms without charge if Buffler had performed the covenants and undertakings prescribed in the agreements.

In a letter dated September 17, 1971, the president of ECPI informed Buffler that the franchise agreements between the parties had expired and that these agreements were terminated as of October 8, 1971. Apparently in the same letter, Buffler was advised that it owed ECPI $38,450.77 under the agreements. Buffler subsequently received from ECPI a "Demand for Arbitration" dated October 8, 1971, setting forth ECPI's intent to arbitrate the above claim before the American Arbitration Association in New York City, pursuant to the arbitration clause in the franchise agreements. Buffler received a similar notice from the American Arbitration Association advising the former that unless it participated in such arbitration on or before October 27, 1971, under Association rules the arbitration would proceed ex parte. Buffler succeeded in obtaining a seven-day extension of this deadline until November 3, 1971.

On October 29, 1971, Buffler filed a complaint in the District Court, setting forth three causes of action against ECPI. Count I of the complaint asserts that the franchise agreements violate Sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1 and 2 and Section 3 of the Clayton Act, 15 U.S.C. § 14, for which Buffler seeks treble damages and injunctive relief under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26. Count II seeks damages and rescission of the agreements for ECPI's alleged breach of contract in failing to meet its obligations under the agreements. Count III seeks damages arising from ECPI's alleged "fraud and breach of its confidential and fiduciary obligation" under a separate franchise agreement relating to Buffler's operation of a computer training school in Chattanooga, Tennessee.[1] Federal jurisdiction over Counts II and III is invoked under diversity of citizenship.

At the same time it filed the above complaint, Buffler moved for a temporary restraining order and a preliminary injunction against ECPI's continuing with the arbitration proceedings which were scheduled to commence in New York City on November 3rd. In support of these motions, Buffler claimed that it would suffer irreparable harm in that the arbitration would proceed ex parte if the restraining order and/or preliminary injunction were denied.

---

1. The complaint states that Buffler purchased the Chattanooga franchise from ECPI on or about April 17, 1967, for $4,000, $1,000 of which was paid as a downpayment. It is further alleged that ECPI thereafter secretly arranged for the sale of this franchise to one Vance Fry. Knowing that Buffler was having financial difficulties ECPI assertedly repurchased the franchise from Buffler for $1,000 and then sold it to Fry for $25,000.

It does not appear that ECPI's claim for $38,450.77, which is the subject of the demand for arbitration, in any way relates to the Chattanooga franchise agreement.

The District Court conducted a hearing on Buffler's motions on November 19, 1971, at which counsel for both parties appeared and presented argument. Relying on its "examination of the pleadings and careful listening to the respective arguments of counsel," the District Court concluded that the "record presents serious questions of law and fact which can be answered only after a full hearing on the merits." Finding that continuation of the arbitration proceedings "could cause irreparable loss and harm to the plaintiff who appears from the pleadings and arguments of his counsel to be a person in financial stress," the District Court granted Buffler's motion for a preliminary injunction against ECPI's continuing with the arbitration proceedings.

We vacate the District Court's order granting the injunction.

## I. APPEALABILITY

We are initially faced with the question of whether we have jurisdiction to hear ECPI's appeal from the District Court's order granting a preliminary injunction against arbitration. ECPI invokes appellate jurisdiction under both 28 U.S.C. § 1291 (appeals from final decisions) and 28 U.S.C. § 1292(a)(1) (appeals from interlocutory decisions). Because we conclude below that the District Court's order is appealable under Section 1292(a)(1) as an interlocutory order granting an injunction, we need not consider whether it might otherwise be characterized as a final judgment under Section 1291, as that statute has been construed in Gillespie v. United States Steel Corp., 379 U.S. 148, 152–154, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964); Swift & Co. Packers v. Compania Colombiana Del Caribe, S. A., 339 U.S. 684, 688–689, 70 S.Ct. 861, 94 L.Ed. 1206 (1950); and Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 545–547, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

In considering the appealability of the District Court's order [2] under 28 U.S.C. § 1292(a)(1), we do not write on a clean slate. In a series of decisions, the Court of Appeals for the Second Circuit has held that an order granting or denying an injunction against (or a stay of) arbitration proceedings is not appealable under Section 1292(a)(1). Greater Continental Corp. v. Schechter, 422 F.2d 1100, 1102–1103 (2d Cir. 1970); Lummus Co. v. Commonwealth Oil Refining Co., 297 F.2d 80, 84–86 (2d Cir. 1961), cert. denied, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962); Greenstein v. National Skirt & Sportswear Ass'n, 274 F.2d 430 (2d Cir. 1960). The Court of Appeals for the Ninth Circuit has reached the opposite result, holding that the denial (and presumably the grant) of a stay of arbitration proceedings is appealable under Section 1292(a)(1). Power Replacements, Inc., v. Air Preheater Co., 426 F.2d 980, 982 (9th Cir. 1970); A. & E. Plastik Pak Co. v. Monsanto Co., 396 F.2d 710, 713 (9th Cir. 1968). The Court of Appeals for the First Circuit appears to have taken a hybrid approach by holding that the denial of a stay of arbitration proceedings is not appealable under Section 1292(a)(1), New England Power Co. v. Asiatic Petroleum Corp., 456 F.2d 183, 185–187 (1st Cir. 1972), but that the grant of such an injunction or stay is appealable under that Section, Lummus Co. v. Commonwealth Oil Refining Co., 280 F.2d 915, 917 (1st Cir.), cert. de-

---

2. It is important to emphasize that the District Court's order presently before us grants Buffler's motion for a preliminary injunction against ECPI's continuation of the arbitration proceedings. The order does not also involve the denial of a motion to stay Buffler's action in the District Court pending arbitration. From the record before us, it appears that ECPI has not moved for such a stay pending arbitration. We therefore are not faced with the question of the appealability of grants or denials of stays pending arbitration, as governed by the *Enelow-Ettelson* rule with its incongruous results stemming from the "outmoded procedural differentiation" between law and equity. Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 184, 75 S.Ct. 249, 99 L.Ed. 233 (1955). *See, e. g.*, Chapman v. International Ladies' Garment Workers' Union, 401 F.2d 626, 628 (4th Cir. 1968).

nied, 364 U.S. 911, 81 S.Ct. 274, 5 L.Ed. 2d 225 (1960).[3] *See* generally 9 Moore's Federal Practice, ¶ 110.20 [4.–1] at 248–49 (2d ed. 1970) (commenting on the approaches taken by the Second and Ninth Circuits).

The Second Circuit bases its rule of nonappealability on the following grounds:

"(1) appealability of a denial to stay arbitration would further delay the arbitration proceedings and thereby eliminate one of the primary purposes of arbitration, i. e., the speed of the proceedings; (2) arbitration differs from another court proceeding in the essential respect that arbitration *would not produce an enforceable result* without further judicial action." Greater Continental Corp. v. Schechter, 422 F.2d 1100, 1102–1103 (1st Cir. 1970).[4]

---

3. In *Lummus* (1st Cir.), the Court proceeded to consider the merits of the appeal without discussing the appealability of the District Court's order granting a preliminary stay and injunction against arbitration. The same Court's recent opinion in *New England Power*, 456 F.2d at 186, however, cites *Lummus* for its implicit holding respecting appealability.

4. The Second Circuit rule appears to have also emerged in part from a misplaced reliance on that Court's decision in Armstrong-Norwalk Rubber Corp. v. Local Union No. 283, 269 F.2d 618 (2d Cir. 1959). In *Armstrong-Norwalk*, although the employer had moved for a preliminary injunction against arbitration, the District Court ruled only upon the union's subsequent motion for a stay of the court proceedings pending arbitration and granted the same. 167 F.Supp. 817, 818, 821. The Court of Appeals' consideration of appealability under Section 1292(a)(1) was therefore restricted to the stay pending arbitration—a question governed by the *Enelow-Ettelson*, law-equity distinction as preserved in Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955).

Nonetheless, in Greenstein v. National Skirt & Sportswear Ass'n, 274 F.2d 430, 431 (2d Cir. 1960), the Court of Appeals relied on *Armstrong-Norwalk* as having dealt with a refusal to stay arbitration. The *Greenstein* Court therefore proceeded to tacitly apply the *Enelow-Ettelson-Baltimore Contractors*, law-equity distinction to determine the appealability of a District Court's order denying an application for an interlocutory injunction against arbitration. Concluding that the suit in the District Court was equitable, rather than legal, the Court of Appeals held that the order was not appealable.

Then in Lummus Co. v. Commonwealth Oil Refining Co., 297 F.2d 80 (2d Cir. 1961), cert. denied, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962), an appeal was taken from the District Court's order granting a stay of arbitration pending a trial of the issues concerning the making of the contract and the arbitrability of the disputed claims. The Court of Appeals relied in part on what it termed the implicit holding of *Armstrong-Norwalk* and the explicit holding of *Greenstein* that the denial of a stay of arbitration proceedings is not appealable, and concluded that the District Court's order granting a stay of arbitration pending a trial of arbitrability was similarly not appealable.

Finally, in Greater Continental Corp. v. Schechter, 422 F.2d 1100 (2d Cir. 1970), the Court of Appeals was faced with an appeal from the District Court's order denying a stay of arbitration proceedings. The Court expressly noted that the appealability of an order granting or denying a stay of arbitration (as opposed to an order granting or denying a stay of court proceedings pending arbitration) "does not depend upon the old distinction between law and equity." 422 F.2d at 1102. Nonetheless, in support of its holding that the District Court's order denying a stay of arbitration was not appealable, the *Greater Continental* Court relied on the *Lummus* and *Greenstein* decisions above.

By rejecting the notion that the appealability of orders granting or denying stays of arbitration is governed by the law-equity distinction, the *Greater Continental* Court thus displaced the principle which, as applied in *Greenstein*, had given birth to the Second Circuit rule. Our discussion in the text is therefore restricted to the reasons set forth in *Greater Continental* and *Lummus* in support of the rule—apart from the Court's prior decisions.

Albeit for diametrically opposed reasons, we agree with the Second Circuit's statement in *Greater Continental* that the appealability of an order granting or denying a stay of arbitration should not be controlled by the *Enelow-Ettelson* distinction between law and equity. Although the Supreme Court in Baltimore Contractors, Inc. v. Bodinger, *supra*, 348 U.S. 176 at 182–184, 75 S.Ct. 249, applied this "out-

See also Lummus Co. v. Commonwealth Oil Refining Co., 297 F.2d 80, 86 (2d Cir. 1961), cert. denied, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962).

We are unable to see how arbitration proceedings are necessarily delayed when an appeal is taken from a District Court's order *denying* a stay of those proceedings. Presumably the arbitration goes forth untouched unless an injunction against arbitration pending appeal is issued by the District Court or the Court of Appeals under Rule 8(a), F.R.A.P. While we recognize that such injunctions pending appeal may often be sought to prevent the appeals from becoming moot, the granting of these injunctions under Rule 8(a) is nonetheless within the discretion of the court. Whatever may be the ramifications of this intriguing problem, we do not believe that it can be resolved only by the Second Circuit's rule of nonappealability.

If there are delays in arbitration which may accompany an appeal from an order denying a stay of arbitration, they do not appear to be as significant as the delays in arbitration which can result from the inability to appeal from an order *granting* a stay of arbitration. The District Court's order presently on appeal grants a preliminary injunction against arbitration which, from our reading of the Opinion from the Bench, could remain in effect through a trial on the merits of Buffler's antitrust, breach of contract, and breach of fiduciary duty claims. Needless to say, we do not find that the delays in arbitration which may result from appeals from orders denying stays of arbitration warrant a rule that

bars appeals from orders granting or denying such stays.

The second reason cited by the *Greater Continental* Court in support of its rule of nonappealability appears to suggest that orders granting or denying stays of arbitration do not result in "serious, perhaps irreparable, consequences," Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 181, 75 S.Ct. 249, 99 L.Ed. 233 (1955), since arbitration awards are not enforceable without further judicial action which affords an opportunity for a court to review the propriety of the arbitration. *See also* Lummus Co. v. Commonwealth Oil Refining Co. (2d Cir.), *supra,* 297 F.2d 80 at 85–86. In a case where the District Court's order *denies* a stay of arbitration, this rationale may have some validity if the prospect of allowing the parties to go through a possibly needless arbitration is viewed as not a serious consequence.

■ In contrast, where the District Court's order *grants* a stay of arbitration, as in the present case, one party is effectively deprived of the relatively inexpensive and expeditious means by which the parties had agreed to resolve disputes. After the parties go through the expense and delay of a trial on the merits of the court action, the advantages of arbitration are lost even if the dispute ultimately returns to arbitration. We find this consequence to be "serious, perhaps irreparable," requiring appealability of such an order. *Accord,* New England Power Co. v. Asiatic Petroleum Co., 456 F.2d 183, 186 (1st Cir. 1972).

It is apparent that the Second Circuit has attempted to accommodate Section

moded" distinction in ruling upon the appealability of an order denying a stay of court proceedings pending arbitration, that decision does not require a similar approach to the appealability of orders granting or denying a stay of arbitration.

The law-equity distinction under *Enelow-Ettelson* is supposedly designed to allow an appeal from a District Court's interlocutory order which—but for the fact that the legal and equitable claims are both asserted in the same court—

would constitute the grant or denial of an injunction against proceedings in another tribunal. See Baltimore Contractors, Inc. v. Bodinger, *supra,* 348 U.S. at 182–183, 75 S.Ct. 249. Neither the theory nor the mechanics of the *Enelow-Ettelson* rule are applicable when the proceedings which are sought to be enjoined are not pending before the court in which the equitable claim is asserted but rather those proceedings are in fact pending in a separate tribunal such as arbitration.

1292(a)(1) to the often complex problems raised by orders respecting arbitration. Apart from the question of whether that statute permits such accommodation [*see* Baltimore Contractors, Inc. v. Bodinger, *supra*, 348 U.S. 176 at 181, 75 S.Ct. 249], the Second Circuit rule is unworkable in the present context of an order granting a preliminary injunction against arbitration.[5]

The rules of both the First Circuit and the Ninth Circuit would recognize that the District Court's order granting a preliminary injunction against arbitration in the present case is appealable under Section 1292(a)(1). We therefore are not required to select between the two. We do note in passing, however, that the First Circuit's approach—recognizing the appealability of orders granting stays of arbitration but the nonappealability of orders denying such stays—raises problems under the language of Section 1292(a)(1), providing for appeals from interlocutory orders "granting [or] . . . refusing . . . injunctions."

 We hold that the District Court's order granting a preliminary injunction against arbitration is appealable under Section 1292(a)(1) as an interlocutory order granting an injunction. For purposes of appealability under that statute, the following reasoning of the Ninth Circuit accurately characterizes the present injunction against arbitration:

"This is not a case of a court's staying or refusing to stay its own hand

in deference to proceedings going forward in another forum. The order was not an exercise by a court of its inherent power to control its own proceedings. Here the court was asked . . . affirmatively to interfere with proceedings in another forum; to exercise its equity powers to halt action of its litigants outside of its own court proceedings—the classic form of injunction. That arbitration is not a mere extension of court proceedings but involves a separate tribunal seems clear from Bernhardt v. Polygraph[ic] Co. of America, 350 U.S. 198, 202–203, 76 S.Ct. 273, 100 L. Ed. 199 (1956)." A. & E. Plastik Pak Co. v. Monsanto Co., 396 F.2d 710, 713 (9th Cir. 1968) (footnote omitted).[6]

*See also* Power Replacements, Inc. v. Air Preheater Co., 426 F.2d 980, 982 (9th Cir. 1970).

## II. MERITS OF THE APPEAL

Turning to the question of whether the District Court abused its discretion in granting the preliminary injunction against arbitration, we initially note that ECPI has at no time sought to have Buffler's antitrust claims arbitrated. Rather, as observed by the District Court in its Opinion from the Bench, the parties agree that the antitrust features of Buffler's suit cannot and should not be resolved by arbitration. *See* Power Replacements, Inc. v. Air Preheater Co., 426 F.2d 980, 983–984 (9th Cir. 1970); A. & E. Plastik Pak Co. v. Monsanto Co., 396 F.2d 710, 715–716 (9th Cir.

---

5. In what appears to be its only case involving an order granting a stay of arbitration, the Second Circuit held that the order was not appealable. Finding the District Court's error in granting the stay to have been exceptional, however, the Court of Appeals granted Appellant's petition for a writ of mandamus and vacated the order. Lummus Co. v. Commonwealth Oil Refining Co., *supra*, 297 F.2d 80 at 84–93.

6. This reasoning by the Ninth Circuit in support of its rule of appealability appears to be consistent with that of the Supreme Court in Baltimore Contractors,

Inc. v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955), dealing with the appealability of orders granting or denying stays of court proceedings pending arbitration. As discussed in the last two paragraphs of footnote 4, *supra*, the *Baltimore Contractors* Court's objective in applying the *Enelow-Ettelson* rule in the latter context was to allow appeals under Section 1292(a)(1) from those interlocutory orders which could be said to grant or deny injunctions against proceedings in another tribunal (as opposed to orders by a "chancellor" determining how he would try the case before him). 348 U.S. at 176, 182–183, 75 S.Ct. 249.

1968); American Safety Equipment Corp. v. J. P. Maguire & Co., 391 F.2d 821, 825–828 (2d Cir. 1968). *Compare* Coenen v. R. W. Pressprich & Co., 453 F.2d 1209, 1214–1215 (2d Cir. 1972).

Moreover, it seems clear that arbitration of ECPI's claim for money allegedly owed under the franchise agreements would not require the arbitrators to resolve any legal or factual issues relating to the antitrust claims. Buffler's complaint alleges various violations of Sections 1 and 2 of the Sherman Act, 18 U.S.C. §§ 1 and 2, and Section 3 of the Clayton Act, 15 U.S.C. § 14, including a tie-in between ECPI's franchises and the books and instructional materials furnished thereunder; price-fixing in tuition fees; monopolization as a supplier of books and instructional materials, as evidenced by artificially high prices for these goods and artificially high royalty fees; combination and conspiracy in restraint of trade; and restrictive geographical limitations. None of the issues underlying these allegations would have to be resolved by the arbitrators reviewing ECPI's claim under the terms of the franchise agreements. *Compare* A. & E. Plastik Pak Co. v. Monsanto Co., *supra*, 396 F.2d 710 at 716.

Nor can it be said that by refusing to enjoin the arbitration proceedings the District Court would have been lending its hand to the enforcement of a contract provision which is illegal under the anti-trust laws. *Compare* Continental Wall Paper Co. v. Louis Voight & Sons Co., 212 U.S. 227, 261–262, 29 S.Ct. 280, 53 L.Ed. 486 (1909), *with* Kelly v. Kosuga, 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475 (1959). Even if we could assume

that Buffler's antitrust allegations are meritorious and that ECPI's claim is directly related to one of the allegedly illegal aspects of the agreements—assumptions which are not available under the present status of the case [7]—we do not believe that a court's refusal to enjoin arbitration of a claim under a contract can be said to constitute judicial enforcement of conduct proscribed by the antitrust laws. *See* Kelly v. Kosuga, *supra*, 358 U.S. 516 at 520, 79 S.Ct. 429.

We therefore find nothing in Buffler's antitrust claims which would require or justify the preliminary injunction against arbitration.

The District Court alluded to Buffler's contention that arbitration is neither mandatory nor the exclusive remedy by which the parties had agreed to resolve disputes under the franchise agreements. The arbitration clause in the agreements provides as follows:

"This agreement shall be construed under the laws of the State of New York. Any disputes arising out of or concerning this agreement shall be settled by the American Arbitration Association in New York City (unless some other place is mutually agreed upon by the parties in writing) in accordance with the rules and regulations then prevailing and in effect, except that nothing herein contained shall be deemed to deprive the parties of their right to any equitable relief to which they may otherwise be entitled. The decision upon arbitration shall be binding on both parties."

Whatever questions, if any, may exist with respect to the arbitrability of ECPI's claim for money allegedly due under the agreements,[8] those uncertainties

---

7. ECPI had not yet answered Buffler's complaint when the District Court held the hearing on Buffler's motion for a preliminary injunction. Nor did the District Court make any findings respecting the relationship between ECPI's claim under the franchise agreements and the allegedly illegal aspects of those agreements.

8. As noted in footnote 2 of this opinion, the District Court's order presently on appeal involves only the grant of a preliminary injunction against arbitration. The order does not involve—and ECPI has apparently not sought—a stay of the District Court proceedings pending arbitration of any of the claims raised in Buffler's complaint. We therefore are

are not evident from the arbitration clause. If the District Court was of the belief that Buffler had raised substantial questions respecting the arbitrability of ECPI's claim,[9] the Court was required to at least specify those questions and make a preliminary inquiry into their substantiality, rather than merely reiterating Buffler's conclusory allegations as a basis for issuing the preliminary injunction. Moreover—assuming, without deciding, that a stay of arbitration pending the Court's inquiry into questions of arbitrability may be permissible in some cases—if the asserted questions respecting arbitrability were the basis for the District Court's issuance of the preliminary injunction, the scope of the injunction should have been expressly limited to simply allow a prompt resolution of these questions apart from unrelated issues raised by Buffler's complaint. As it presently stands, the preliminary injunction is open-ended, and resolution of any questions respecting arbitrability could await a prolonged trial on the merits of Buffler's suit.

■ Finally, we note the District Court's reference to Buffler's asserted financial inability to participate in the arbitration proceedings in New York, which appears to have been a primary factor in the Court's determination that irreparable harm would result if the injunction were not issued. We find no authority to suggest that the financial hardship of a party can relieve him from his contractual obligation to resolve disputes by arbitration, particularly where the arbitration clause incorporates the rules of the American Arbitration Association which provide for ex parte proceedings.[10] *Cf.* Kentucky River Mills v. Jackson, 206 F.2d 111, 118 (6th Cir.) cert. denied, 346 U.S. 887, 74 S.Ct. 144, 98 L.Ed. 392 (1953).

■■ From the record before us, we are thus unable to find any basis for the issuance of the preliminary injunction. While we recognize that the grant or denial of a preliminary injunction pending a trial on the merits is within the sound discretion of the District Court, we must hold that the issuance of the preliminary injunction against arbitration on the present state of the record in this case constituted an improvident exercise of judicial discretion. *Cf.* Com-Share, Inc. v. Computer Complex, Inc., 458 F.2d 1341, 1342 (6th Cir. 1972); Nashville I-40 Steering Committee v. Ellington, 387 F.2d 179, 182 (6th Cir. 1967), cert. denied, 390 U.S. 921, 88 S.Ct. 857, 19 L. Ed.2d 982 (1968).

The District Court's order granting a preliminary injunction against ECPI's continuing with the arbitration proceedings is vacated.

---

not presently concerned with the arbitrability of those claims, with the exception of the antitrust issues which, as a matter of law, are not arbitrable in this case.

9. Although the franchise agreements clearly appear to be "contracts evidencing a transaction involving commerce" so as to invoke the United States Arbitration Act, 9 U.S.C. § 1 et seq., the District Court did not reach this question nor need we for purposes of the present appeal. We note, however, that if the District Court entertains any doubts about the enforceability of the arbitration clause, 9 U.S.C. § 2 clearly appears to govern this question, making arbitration agreements enforceable as a matter of federal law. *Cf.* Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404–405, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

10. The applicable rules of the American Arbitration Association, which are incorporated by reference in the arbitration clause, provide for an ex parte proceeding (but not an award by default) when one of the parties fails to appear after due notice. In such a case, the arbitrator is to require the participating party to submit evidence necessary for the making of an award. Commercial Arbitration Rules of the American Arbitration Association, Section 29 (June 1, 1964).