**NORTH SUPPLY COMPANY, Plaintiff-Cross-Appellant,**

v.

**GREATER DEVELOPMENT AND SERVICES CORPORATION, Manfred R. Lehmann and S. Anne Lehmann, Defendants-Cross-Appellees.**

**No. 80–3607.**

United States Court of Appeals, Sixth Circuit.

Argued March 25, 1983.

Decided Feb. 29, 1984.

As Amended on Denial of Rehearing and Rehearing En Banc April 12, 1984.

Thomas L. Dalrymple, Ray A. Farris, Fuller, Henry, Hodge & Snyder, Toledo, Ohio, Donald L. Kreindler, argued, Michael D. Blutrich, Kreindler & Relkin, New York City, for defendants-cross-appellee.

Philip A. Lloyd, Brouse & McDowell, John W. Solomon, Akron, Ohio, Lawrence Kill, argued, New York City, for plaintiff-cross-appellant.

Before KENNEDY and JONES, Circuit Judges, and GILMORE, District Judge.*

NATHANIEL R. JONES, Circuit Judge.

This case is presently before the Court upon North Supply Company's (hereinafter "North Supply") cross-appeal from the district court's order denying its motion for a stay of the arbitration proceedings initiated by the Greater Development Services Corporation (hereinafter "GDSC"). GDSC had originally appealed from the district court's order denying its motion to dismiss the action below pending arbitration. This appeal was previously dismissed for lack of jurisdiction. Upon consideration of the issues presented by this appeal, we conclude that the district court's order denying the stay of arbitration is non-appealable and

therefore dismiss North Supply's cross-appeal for lack of jurisdiction.

The events leading to this action are somewhat unusual.[1] GDSC is apparently an umbrella corporation through which defendants Manfred R. Lehmann and his wife operate assorted money making schemes. It appears that Lehmann held himself out to be an expert in soliciting business for American corporations in the Black English-speaking nations of Africa. GDSC, through Lehmann, contracted with North Supply to act as its representative in procuring a contract with the Nigerian military. Pursuant to the contract between GDSC and North Supply, GDSC's right to commissions was to vest upon the formation of a contract between North Supply and the Nigerian government, and any subsequent cancellation of that agreement was to have no effect upon GDSC's right to commission payments.

GDSC, its principals and its agents commenced their efforts on North Supply's behalf in 1975. After several visits to Nigeria, GDSC was successful in persuading the Nigerians to consider purchasing telephonic equipment from North Supply. GDSC also arranged for Nigerian officials to travel to West Germany to visit a NATO facility where telephonic equipment sold by North Supply was being used. Over the next two years, negotiations continued and were apparently approaching the point of finalization. Some time in late February of 1977, however, Lehmann was arrested by Nigerian officials and detained for approximately two weeks. Though no formal changes were brought against Lehmann, GDSC was unofficially advised that the arrest was based on the Nigerian belief that the visits by Nigerian officials to the West German NATO base were illegal and unauthorized and had seriously compromised the Nigerian government. In addition, the affidavits of several Nigerian officials indicate that the Nigerian government believed Leh-

---

* The Honorable Horace W. Gilmore, District Judge for the Eastern District of Michigan, sitting by designation.

1. The facts which follow are included for background information only. These facts are mere-

ly alleged, and our recitation thereof should not be read as indicating our belief that they have or have not been conclusively established.

mann to be "of such dubious character that he should be deported from Nigeria so as to put an end to his diverse wrongful conduct, scandalous practices and corrupting influence on Nigerian public officers." Lehmann was then expelled from the country thereby putting an end, at least temporarily, to negotiations.

Following these events, North Supply began to negotiate with the Nigerian government on its own. Several months later, North Supply finally executed a contract with the Nigerian government for the sale to the military of an automatic switching system with a net contract price in excess of $7 million. It is undisputed that GDSC played no role in the negotiations between North Supply and the Nigerian government after February of 1977.

Some months later, the Nigerian government discovered that North Supply had previously been operating through Lehmann and had existed as an undisclosed principal. Apparently, the retention of local representatives for purposes of negotiation with the Nigerian government was in blatant violation of Nigerian law, as were the contractual provisions prohibiting the disclosure of the relationship. As a result of this discovery the Nigerian government cancelled the contract with North Supply, required North Supply to refund the downpayment, and imposed a heavy penalty on North Supply for its participation in the venture.

GDSC now asserts a right to commission payments because of the contract which was ultimately formed between North Supply and the Nigerian government. Rather than make commission payments to GDSC, North Supply instituted this action seeking reformation of the contract between it and GDSC. North Supply seeks reformation in three essential respects. First, despite the clause in the contract which guarantees commission payments even where cancellation occurs, counts one and seven of North Supply's complaint seek reformation of the agreement to reflect an intention that GDSC would not be entitled to commission payments should the Nigerian agreement be cancelled through the wrongful acts of Lehmann, and should North Supply receive no benefit thereunder. Second, North Supply claims that despite the fact that the agreement was, on its face, between it and GDSC as a corporate entity, the contract was truly a personal services contract with the services to be rendered by Lehmann. Thus count two of the complaint seeks reformation of the agreement to guarantee that no right to commission payments would accrue absent Lehmann's personal ability to perform. Finally, counts five and nine of the complaint seek reformation of the agreement to provide that GDSC would not be entitled to commission payments when such payments and the agreement itself violated local law.

While this action was pending below, GDSC instituted proceedings under the arbitration clause[2] of the contract. GDSC claimed that North Supply's complaint did nothing more than seek an interpretation of the terms of the contract which contained a carefully drawn integration clause. Therefore such contract interpretation questions would clearly be within the exclusive jurisdiction of the arbitrator as defined by the contract itself. Alternatively, GDSC claims that even if North Supply's claims were properly construed as claims for reformation, those claims were also to be left within the purview of the arbitrator given the broad terms of the arbitration clause.

The district court considered the parties' arguments and determined that although the arbitration clause was particularly broad in scope, the penultimate sentence of

---

**2.** The arbitration clause in question provides: ¶ 21. *Arbitration:* Any controversy arising out of or in any way relating to this agreement or the performance thereof shall be settled by arbitration in Washington, D.C. pursuant to the rules of the American Arbitration Association. The relevant law to be applied in any arbitration is the law of the State of Ohio. The arbitrator sitting in any such controversy shall have no authority to alter or modify any provision of this agreement or to render any award which effects any such alteration or modification. Judgment on any award may be entered in any court having jurisdiction.

that clause specifically prohibited the arbitrator from reforming the contract. In addition, the district court found that at least some of the claims asserted by North Supply sounded in reformation. Accordingly, the district court refused to dismiss North Supply's complaint for lack of subject matter jurisdiction. The district court also refused to stay the arbitration proceedings pending resolution of the action before it. It is from these respective orders that the parties appealed.

■ The parties to this action initially failed to raise before this Court the issue of the appealability of the district court's order. It is not subject to doubt, however, that we may raise the issue *sua sponte* at any point in the proceedings. *See, e.g., Alexander v. Aero 735, International Association of Machinists,* 565 F.2d 1364, 1370 (6th Cir.1977), *cert. denied,* 436 U.S. 946, 98 S.Ct. 2849, 56 L.Ed.2d 787 (1978); *Miller v. United States,* 403 F.2d 77, 78 (2d Cir.1968). The lack of subject matter jurisdiction is a nonwaivable defect that may be raised at any time to justify dismissal of a pending action. *Id.*

28 U.S.C. § 1292(a)(1) provides in pertinent part as follows:

(a) Except as provided in subsections (c) and (d) of this section, the court of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court...

The jurisdictional issue presented in this case has generally been addressed in terms of whether, and to what extent, § 1292(a) allows and/or mandates review in the court of appeals. This issue is one which has evoked widespread disagreement among the various circuits in which it has been considered. In fact, not only have these circuits disagreed on the appealability of such orders, but the rationale for allowing or denying an appeal in such cases varies from circuit to circuit.

The Ninth Circuit was apparently the first to consider this issue. In *A. & E. Plastik Pak Co. v. Monsanto Co.,* 396 F.2d 710, 713 (9th Cir.1968), that circuit held that orders granting or denying stays of arbitration were a "classic form of injunction" and, hence, appealable under § 1292(a)(1):

Here the court was asked ... affirmatively to interfere with proceedings in another forum; to exercise its equity powers to halt action of its litigants outside of its own court proceedings—the classic form of injunction.

The Ninth Circuit has since affirmed this position with no further analysis or rationale. *Power Replacements, Inc. v. Air Preheater Co.,* 426 F.2d 980, 982 (9th Cir.1970).

On the opposite side of the ledger the Second Circuit has held that orders granting or denying stays of arbitration are not injunctions within the meaning of § 1292(a). *Greater Continental Corp. v. Schechter,* 422 F.2d 1100, 1102–3 (2d Cir. 1970). Finding also that such orders were not final orders under § 1291, the Second Circuit held that they were simply nonappealable. *Id.* The Second Circuit reasoned that § 1292(a) was specifically intended to allow appeals from some orders which, although not final, have serious and perhaps irreparable consequences. *Id.* at 1103. That court believed that a denial of a stay of arbitration would not cause irreparable consequences because arbitration does not produce an enforceable result absent further judicial action where the arbitral decision can be reviewed. Therefore, in the Second Circuit's view, § 1292(a) could not have been intended to apply to orders granting or denying stays of arbitration.[3] *Id.*

---

**3.** The court also noted a further reason for dealing with these orders differently than it

would stays of other proceedings. The appealability of a refusal to stay arbitration would

The blanket rule against appealability espoused by the Second Circuit has been adopted by both the Third and Eighth Circuits as well. *Stateside Machinery Co. v. Alperin,* 526 F.2d 480 (3d Cir.1975); *Mellon Bank, N.A. v. Pritchard-Keang Nam Corp.,* 651 F.2d 1244 (8th Cir.1981). The Eighth Circuit, however, although concurring in the result reached by the Second Circuit, refused to adopt that court's reasoning. In *Mellon Bank,* the Eighth Circuit conceded that an order granting or denying a stay of arbitration was an injunction, but indicated that there were other policy reasons for denying the appeal in these circumstances. Specifically the *Mellon Bank* court considered the strong federal policy encouraging arbitration and the federal policy against interlocutory piece-meal appeals and concluded that the combination of the two warranted a blanket nonappealability rule in these circumstances. 651 F.2d at 1249–50.

The Seventh Circuit has taken quite another approach to the issue. In dealing with whether or not orders granting or denying a stay of a district court's own proceedings are appealable, the federal courts have adopted a rule known as the *Enlow-Ettelson* rule. This rule essentially draws a distinction between cases involving issues which are ultimately equitable versus those which are ultimately legal. Where the equitable element of the action is no more than "incidental" to a legal claim, an order of a district court denying or granting a stay of its own proceedings is immediately appealable. Where, however, the equitable elements of the underlying action predominate or are substantial in any way, that order is not appealable. This arcane distinction, though criticized by all who have addressed the issue, is firmly embedded in federal precedent and has been reaffirmed by the Supreme Court and the federal courts of appeals on numerous occasions. *See, e.g., Baltimore Contractors v. Bodinger,* 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955); *Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017 (6th Cir.1979). This rule

supplied the basis for the order of this Court in January 1982 dismissing GDSC's appeal from the district court's denial of the motion to stay its own proceedings. The Seventh Circuit, following the lead of the D.C.Circuit, *see Lee v. Ply Gem Industries, Inc.,* 593 F.2d 1266 (D.C.Cir.), *cert. denied,* 441 U.S. 967, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979), has simply extended the application of the *Enlow-Ettelson* rule to the context of motions to stay arbitration proceedings. Hence, the issue will be determined on a case-by-case basis, depending on the underlying nature of the remedy sought, i.e., whether it is predominately equitable or predominately legal.

The First Circuit has adopted a hybrid approach to the issue, finding that while orders granting a stay of arbitration are appealable, those denying a stay are not. *New England Power Co. v. Asiatic Petroleum Corp.,* 456 F.2d 183 (1st Cir.1972). That court, like the Eighth Circuit, admitted that the orders were injunctions, but found, again like the Eighth Circuit, various policy reasons for not simply resorting to the plain language of § 1292(a) to resolve the issue. The *New England Power* court reasoned that the important central policies behind the federal arbitration act and the various Supreme Court cases presumptively favoring arbitration in all cases, mandated its hybrid approach. The court addressed and rejected both the Second and Ninth Circuits' approaches, favoring their own intermediate stance:

> Without caviling at the correctness of the label, we are of the opinion that whether an injunction is "classic" or not does not resolve the question when strong countervailing policies are involved. It is one thing to hold as we have, that an order enjoining arbitration is appealable, but quite another to hold that a refusal to so order may be immediately reviewed on motion of one of the parties. A decision to stay impending arbitration may well be an injunction in the "classic" sense

result in further delay of the arbitration proceeding, thereby eliminating one of the primary

purposes of arbitration, i.e., the speed of the proceedings.

since it effectively deprives at least one of the parties to the dispute of one of the principal objects for which he has contracted—that is, a relatively expeditious and inexpensive preliminary resolution of any controversy. A refusal to stay arbitration, on the other hand, has no such potentially adverse impact on the ultimate rights of the parties. The effect of a refusal to intervene is either to permit arbitration to run its course, with the mutual—albeit reluctant—consent of the parties, or if one of the parties persists in refusing to submit to arbitration, to require the party favoring arbitration to move under 9 U.S.C. § 4 for court order compelling the objecting party to go to arbitration.

456 F.2d at 186 (citations omitted). The First Circuit reasoned that its approach would ensure the ultimate protection of the policies embodied in the federal arbitration act in all possible instances.

■ Though the precise issue before the Court today has not been addressed by this Circuit, this Circuit has addressed the question of the appealability of an order *granting* a stay of arbitration. In *Buffler v. Electronic Computer Programming Institute, Inc.*, 466 F.2d 694 (6th Cir.1972), a panel of this Court held that an order granting a preliminary injunction against arbitration is appealable under § 1292(a)(1) as an interlocutory order granting an injunction. Though the decision in that case specifically left open the question of whether or not an order denying a stay of arbitration was also appealable under § 1292(a)(1), it does eliminate some of the possible approaches which the other circuits have taken to date. First, *Buffler* clearly rejects the Second Circuit's blanket nonappealability rule. In addition, the *Buffler* opinion clearly rejects the approach adopted by the

Seventh and D.C. Circuits, indicating that the *Enlow-Ettelson* rule is simply inapplicable where the proceedings sought to be enjoined are not pending before the court in which the equitable claim is asserted but, rather, are in fact pending in a separate tribunal such as arbitration. 466 F.2d at 698 n. 4. The effective result of the opinion then is to, absent overruling that opinion, give this Court only one of two options: to follow the First Circuit's hybrid approach or to adopt the blanket appealability rule of the Ninth Circuit. Because of the strong federal policies in favor of arbitration and against interlocutory piecemeal appeals, we believe the First Circuit's approach embodies the better view. Accordingly, we hold that the district court's order denying the motion for a stay of arbitration is non-appealable [4] and therefore dismiss the appeal for lack of jurisdiction.[5]

CORNELIA G. KENNEDY, Circuit Judge, dissenting.

I respectfully dissent from the majority's adoption of the First Circuit's hybrid approach to the appealability of interlocutory orders granting or denying stays of arbitration. 28 U.S.C. § 1292(a)(1) (1976) is a statutory exception to the rule of finality, providing for appeals from:

Interlocutory orders of the district courts of the United States ... granting, continuing, modifying, *refusing* or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court ....

(Emphasis supplied.) As I read § 1292 (a)(1), inquiry is properly directed to the nature of the relief sought rather than to whether the relief was granted or refused.

In *Buffler v. Electronic Computer Programming Institute, Inc.*, 466 F.2d 694 (6th

---

4. Our disposition of this appeal should not be read to question this Court's prior holding in *Buffler, supra.* We are, instead, merely answering the question specifically left open by that opinion. 466 F.2d at 699. *Buffler* remains the law of this Circuit where the district court's order grants, rather than denies, a stay of arbitration.

5. In dismissing the appeal, we decline North Supply's invitation to issue a writ of mandamus directed to the district court as an alternative to assuming jurisdiction. Although the district court's orders will result in some duplication, we do not feel that such duplication warrants the extraordinary remedy of mandamus relief.

Cir.1972), this Circuit addressed the question of the appealability of an order *granting* a preliminary injunction against arbitration.[1] Dismissing the public policy concerns which led the Second Circuit to prohibit appeals from either denials or grants of stays of arbitration, this Court concluded that not only is it unlikely that arbitration proceedings will be delayed by the appeal from an order denying the stay (because presumably the arbitration would go forth untouched unless an injunction against arbitration pending appeal is issued), but "[i]f there are delays in arbitration which may accompany an appeal from an order denying a stay of arbitration, they do not appear to be as significant as the delays in arbitration which can result from the inability to appeal from an order *granting* a stay of arbitration." *Id.* at 698 (emphasis in original).

As § 1292(a)(1) mandates that orders granting and refusing injunctions be equally appealable or non-appealable, I cannot support the majority's hybrid position. Whether an order regarding arbitration takes the form of an order refusing to stay arbitration or an order compelling it will often depend upon which party takes the initiative to have arbitrability determined. If a party refuses to arbitrate, the opposite party must secure an order compelling arbitration. That order is appealable. However, if the party opposing arbitration asks the same court to stay or enjoin arbitration from proceeding on the same basis on which the order compelling arbitration was resisted, the order is not appealable under the majority's holding. Appealability should not rest on such a tenuous distinction.

Because arbitration may well be concluded before an appeal is disposed of, the right to appeal orders denying a stay of arbitration may be illusory. However, the right is accorded by statute. Accordingly, I would hold that interlocutory orders granting or denying stays of arbitration are appealable by right under § 1292(a)(1).

---

1. Some courts speak of enjoining arbitration while others speak of staying arbitration. Regardless of what language is employed, the question is whether the order is an "injunction" within the meaning of 28 U.S.C. § 1292(a)(1) (1976).